486 P.2d 226

**STATE of Arizona, Appellee,**

v.

**Frank Rabago PRECIADO, Appellant.**

**No. 2 CA–CR 253.**

Court of Appeals of Arizona, Division 2.

June 25, 1971.

Gary K. Nelson, Atty. Gen. by Jerry C. Schmidt, Asst. Atty. Gen., Tucson, for appellee.

Howard A. Kashman, Pima County Public Defender by Gilbert Veliz, Jr., Deputy Public Defender, Tucson, for appellant.

HATHAWAY, Judge.

On February 29, 1970 Frank Preciado ran his truck against a fire hydrant. Officer Monk of the Tucson Police Department was in charge of the investigation which resulted in the issuance to Preciado of a citation for destruction of city property. During the investigation Monk observed

that the truck could not be driven, called for a tow truck, and told Preciado to remove his personal belongings from the truck. Apparently angered at the prospect of paying the tow charge, Preciado retrieved a pot of food and struck Monk with it on the head and shoulder as Monk was turning his back to Preciado. Monk subdued Preciado with the help of Roussell, the wrecker driver, who substantiated Monk's testimony. Preciado maintained that he had suffered an epileptic seizure at the time of the incident and therefore was not conscious of his acts. Preciado was convicted of aggravated battery and obstructing justice and sentenced to 2–3 year sentences in the Arizona State Prison on each count to be served concurrently.

A police report concerning the attack upon Monk was prepared. Monk while in the hospital related his story to other officers. Monk's statement was not taken down verbatim by the officers, was not taken by stenographic method, was not recorded, was not signed by Monk, and Monk made no corrections on it. Monk did use the report to refresh his memory for purposes of testifying. At trial defendant's counsel requested permission to see the report to ascertain whether or not it contained statements inconsistent with Monk's testimony. The request was denied and defendant claims this was prejudicial error.

On cross examination, Officer Monk gave the following testimony:

"A  Officer Monk, did you prepare a police report in this matter?

A  I didn't quite hear you.

Q  Did you prepare a police report?

A  Other than the accident report, no.

Q  Did you review the accident report before testifying here today?

A  Today?

Q  Yes.

A  No.

\*    \*    \*    \*    \*    \*

Q  It is your testimony that you had not reviewed the report from the time you prepared it, is that correct?

A  Yes.

Q  Your testimony this morning is just from your memory?

A  Yes.

Q  The evidence is completely—

A  Not completely.

Q  Did you make a report of the incident?

A  I had read other reports by the other officers.

Q  Did those help refresh your memory?

A  To some extent, yes.

MR. VELIZ: May I request to have these reports?

MRS. POLLOCK: That evidence is hearsay and this officer testified from his memory and is not testifying from a report of other officers. He made no report himself of this incident.

THE COURT: Sustained.

Q  It isn't absolutely clear. You didn't assist by preparing the police report, is that correct?

A  Yes, I did.

Q  Then the—were some of the statements of these police reports taken verbatim from what you told the other officers?

A  No, not verbatim.

Q  Tell me exactly what you did, how did you assist in preparing the police report?

A  Well, I was in the hospital and various officers responded to my room and asked me various questions for our Board of Inquiry as to what had happened. At that time I related to them the story as I related it here.

Q  Was it taken by stenographic method?

A  No, it was not.

Q  Was it recorded?

A  No.

Q  Was it submitted to you for your review and signature?

A  No, it was not.

Q When was the next time you saw this report?

A About a month before the preliminary hearing or two weeks before.

Q At that time did you make corrections on it?

A No, I didn't.

MR. VELIZ: We would again request the police report on the ground they were apparently directly from the defendant's mouth and although he was not in a condition to prepare them, even though he was telling them all about it, he was using it to refresh his memory and is really his police report although not prepared by him because he was in the hospital.

MRS. POLLOCK: Your Honor, for number one, I don't know what police report he is talking about, what officers made the report. Other officers made the report. It is hearsay. Officer Monk is here and can tell you what happened and anything else was simply writing up what he said. It is hearsay and certainly is not admissible.

THE COURT: Sustained."

■ The question to be decided on this appeal is the admissibility, for impeachment purposes, of an oral statement of a testifying witness prepared by another person.[1] In State v. Ashton, 95 Ariz. 37, 386 P.2d 83 (1963), our Supreme Court considering the denial of defense counsel's request to examine a police report, prepared by the witness himself, concerning events to which the police officer testified at trial, for purposes of impeachment, found the denial was prejudicial error. Pertinently, the court stated:

"The State concedes that it was error for the trial court to refuse to let defense counsel examine the narrative report for the purpose of impeachment, but argues that it was harmless error, there being no material inconsistencies between the report and the officer's testimony. It is not this court's province to inquire into the possibilities for impeaching the officer's testimony from information contained in his narrative report. We cannot speculate as to what use might have been made of it by defense counsel. Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961). This is a matter which can only be determined by defense counsel, who is entitled to make his independent evaluation from examining the narrative report after hearing the direct testimony of the State's witness. To require defense counsel to show a conflict between the witness' direct testimony and the narrative report, without having seen the report would be to require the impossible. For until the trial judge accords him an opportunity to inspect the report, defense counsel will have no knowledge of its contents. State v. Lavallee, 122 Vt. 75, 163 A.2d 856 (1960). Neither can an appellate court make assumptions as to how an effective use of the narrative report would have affected the witness' credibility in the eyes of the jury."

See also: State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969); State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968); State v. Saenz, 88 Ariz. 154, 353 P.2d 1026 (1960); State v. Wallace, 97 Ariz. 296, 399 P.2d 909 (1965). As pointed out in Wallace, supra, the defendant does not have the right to such reports for pretrial discovery, but where the witness testifies, then for the purpose of determining whether the report contains inconsistent statements it is useable for impeachment. Distinguishing pretrial discovery in State ex rel. Corbin v. Superior Court, 99 Ariz. 382, 384, 409 P.2d 547, 548 (1966), the court stated:

"We have held that at the time a police officer testifies in a case defendant has

1. For a complete discussion of the problem, see Annot., 7 A.L.R.3d 181, 231 (1966).

a right to examine notes and reports of the officer in regard to the matters about which he has testified in order to determine whether they were inconsistent with or otherwise tended to discredit the officer's testimony."

These same considerations are equally applicable where the testifying witness has not formally prepared his own statement.

Contrary to the state's contention it appears that sufficient foundation was given for admission of the police report in question. Officer Monk was the only police officer on the scene during the critical action and the report in question appears to have been based upon his account to fellow officers while he was hospitalized. His incapacity to personally write up the report does not detract from its possible value for purposes of impeachment. See, C. McCormick, Law of Evidence § 34 n. 3 (1954). Nor is it rendered inadmissible by Officer Monk not signing or otherwise acknowledging the accuracy of the statement. Funk v. Superior Court, 52 Cal.2d 423, 340 P.2d 593 (1959); People v. Estrada, 54 Cal.2d 713, 7 Cal.Rptr. 897, 355 P.2d 641 (1960). Despite the state's objection it is clear from the record the witness was aware of which report was requested. If the report contained no inconsistent statements, it could not have detracted from the state's case; but, if inconsistent statements were found, then it may have borne upon the witness' credibility and would have been a proper matter of consideration by the jury. It should have been admitted and we find the appellant was prejudiced by its exclusion. Since reversal is required on the question considered, we deem it unnecessary to address ourselves to the other two questions presented; doing so would be of no particular guiding benefit on retrial.

Reversed.

KRUCKER, C. J., and HOWARD, J., concur.