517 P.2d 102

**The STATE of Arizona, Appellee,**

v.

**Russell Lee SEYMOUR, Appellant.**

**No. 2 CA–CR 338.**

Court of Appeals of Arizona,
Division 2.

Dec. 20, 1973.

Gary K. Nelson, Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Tucson, and Charles L. Weninger, Certified Third Year Law Student under Rule 28(e), for appellee.

O'Dowd, Fahringer & Diamos by Clay G. Diamos, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

Appellant-defendant asserts that his constitutional rights were violated during a hearing which resulted in the revocation of his probation.

On April 5, 1972, defendant pleaded guilty to three crimes and was sentenced to concurrent terms of imprisonment in the Arizona State Prison. On September 26, 1972, defendant's motion for relief from judgment was granted and he was resentenced to 5 years of probation. On February 26, 1973, defendant was found to have violated the conditions of his probation and it was accordingly revoked. He was resentenced to 5 years probation subject to the additional condition that he serve one year in the Pima County Jail.

On February 26, 1973, defendant's adult probation officer, Mr. William Ryerse, petitioned the superior court for a revocation of probation. He alleged that defendant, while confined in the Pima County Jail, had stolen money from other prisoners, had conspired to smuggle marijuana into the jail, had stolen narcotics paraphernalia from the jail, and had used drugs and/or narcotics while in jail.

On June 5, 1973, the probation revocation hearing was held. At that time defendant had only been charged with two counts of petty theft. At the hearing Mr. Ryerse was the sole witness called in support of the allegations in the petition. His personal knowledge of the case was based exclusively upon conversations with a deputy county attorney and reading police reports. He testified that the police reports "indicated" that defendant had violated his probation as alleged. On cross examination, Mr. Ryerse stated that the reports contained information given by witnesses (apparently inmates) who had observed the defendant's alleged probation violations. However, he did not know if these witnesses had signed the reports. Although Mr. Ryerse testified that officers observed defendant "acting in a manner which showed that he was guilty", there was no testimony that the reporting officers had personally witnessed anything amounting to a probation violation. Defendant's counsel never objected to Mr. Ryerse's tes-

timony on hearsay grounds. However, he did request copies of the police reports. This request was denied.

In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court examined the nature of the interest a parolee has in his continued liberty and concluded:

". . . [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege'. By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." (408 U.S. at 482, 92 S.Ct. at 2601).

The court then held that due process required an informal "preliminary hearing" very soon after a parolee's arrest "to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." (408 U.S. at 485, 92 S.Ct. at 2602). A finding of probable cause would be "sufficient to warrant the parolee's continued detention. . . ." (408 U.S. at 488, 92 S.Ct. at 2603).

Within a reasonable time after a finding of probable cause, the state must conduct a hearing leading "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." (408 U.S. at 488, 92 S.Ct. at 2603). The minimum requirements of due process relevant to this proceeding include:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses* (unless the hearing officer specifically finds good cause for not allowing confrontation) ; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (408 U.S. at 489, 92 S.Ct. at 2604). (Emphasis added).

Approximately one month before the hearing in the instant case, the Supreme Court decided Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer. . . ." (411 U.S. at 782, 93 S.Ct. at 1760).

In State v. Marlar, 20 Ariz.App. 191, 511 P.2d 204 (1973), we stressed the right guaranteed by Morrissey to confront and cross examine adverse witnesses at a probation revocation hearing. In *Marlar,* we set aside a revocation of probation based upon the hearsay testimony of the defendant's probation officer noting that "to always allow such evidence over the objections of the probationer would emasculate 'the right to confront and cross examine adverse witnesses.'" (20 Ariz.App. at 193, 511 P.2d at 206).

Although in the present case no specific hearsay objection was made to Mr. Ryerse's testimony, the trial court's refusal to allow him access to the police reports upon which Mr. Ryerse based his testimony was prejudicial error. Since the defendant was denied access to these reports his right under *Morrissey* to cross examine Mr. Ryerse was seriously impaired. Without the right to examine the reports, defendant totally lacked the means to test Mr. Ryerse's recollection of their contents.

Mr. Ryerse's testimony consisted of his conclusion that the reports "indicated" that defendant had violated his probation. This conclusion may or may not be warranted from an examination of the reports.

There may be portions of the reports not mentioned by Mr. Ryerse which could cast doubt upon defendant's complicity in the alleged violations. Likewise, it may be that Mr. Ryerse exaggerated the strength of the allegations in the reports linking defendant to the criminal conduct. Without the reports in hand, impeachment of the testimony along these lines is close to impossible.

The state concedes in its brief and our case law supports the proposition that had the officers who authored the report been witnesses, it would be prejudicial error to deny defendant access to the reports. State v. Ashton, 95 Ariz. 37, 386 P.2d 83 (1963); State v. Saenz, 88 Ariz. 154, 353 P.2d 1026 (1960); Brooks v. Jennings, 17 Ariz.App. 407, 498 P.2d 481 (1972); Zarate v. Jennings, 17 Ariz.App. 401, 498 P.2d 475 (1972); State v. Preciado, 15 Ariz. App. 114, 486 P.2d 226 (1971). In State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968), it was held that the defendant has a right to examine a statement made to police by the victim of a crime when it concerns events about which the victim testifies at trial.

While the above cited cases require disclosure of prior statements on the ground that they may contain prior inconsistent statements made by the witness, see State v. Saenz, supra, 88 Ariz. at 157, 353 P.2d at 1028, we see no difference when disclosure of the reports would serve to test a witness' memory of their contents.

Besides being necessary for impeachment of Ryerse, the reports themselves were in effect offered as substantive evidence through Mr. Ryerse's testimony. In 3A Wigmore, Evidence § 884, the author reasons:

"Yet under certain conditions such statements [hearsay] may exceptionally be received. Now the statement, if thus received, stands testimonially as the *equivalent of a statement made on the stand* and subject to cross-examination . . . . Now, in the same way, the statements being testimonial in their nature, it is proper to subject them, when admitted, to *impeachment in the* appropriate ways . . . ." (Emphasis in original)

 Thus, just as the introduction of an oral hearsay statement is the equivalent of a statement made on the stand, the introduction of witness' hearsay recollections of a written report is the equivalent of the *offering of that report into evidence.* Accordingly, the defendant needed to examine the reports not only to impeach Mr. Ryerse's recollection of them, but also to impeach the reports themselves.

Therefore, the order revoking probation and the sentence imposed in this case are set aside and the case remanded to the trial court for a new hearing. Reversed.

KRUCKER and HOWARD, JJ., concur.