**Gerson Merrill KARTMAN, Appellant,**

**v.**

**Robert PARRATT, Warden, Nebraska Penal & Correctional Complex, Appellee.**

**No. 75–1592.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1975.

Decided May 12, 1976.

Bennett G. Hornstein, Asst. Public Defender, Omaha, Neb., for appellant; Frank B. Morrison, Douglas County Public Defender, and Bennett Hornstein, Omaha, Neb., on brief.

Melvin K. Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for appellee; Paul L. Douglas, Atty. Gen., and M. K. Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., on brief.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal from an order of the District Court[1] dismissing his petition for a writ of habeas corpus, appellant Gerson Merrill Kartman contends that his probation was revoked without affording him the minimum procedural due process required by *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Specifically, he contends: (1) that he was denied a preliminary hearing near the place of and soon after the alleged violation; (2) that he was not given adequate notice of the preliminary and final hearings and of the grounds alleged for revocation; (3) that he was denied the right to an independent decision maker at these hearings; (4) that he was denied his right

---

1. The Honorable Robert V. Denney, United States District Court for the District of Nebraska.

to confront adverse witnesses and information at the preliminary hearing; (5) that the written summaries issued after the two hearings were inadequate; (6) that the state impermissibly revoked his probation on the basis of a crime of which he had not yet been convicted; and (7) that the state impermissibly revoked his probation on the basis of alleged unlawful conduct of which he had been acquitted.

On June 16, 1972, appellant entered a plea of nolo contendere to three counts of motor vehicle homicide in the Douglas County District Court in Omaha, Nebraska. At that time, appellant was sentenced to a term of two months imprisonment on Count I. Sentence on Counts II and III was suspended and appellant was placed on probation for two years, commencing on completion of the jail sentence on Count I.

Subsequently, on July 9, 1973, an information was filed charging that the appellant had violated his probation by defrauding an innkeeper and engaging in drunk and disorderly conduct on July 5, 1973, in Omaha. A hearing was held in Omaha on the day the information was filed, and the matter was continued until August 1, 1973. Appellant was released on bond. The matter was again continued until September 17, 1973. On September 17th, the state trial court permitted the original information to be withdrawn and allowed the state to file a substitute motion to revoke probation. The motion to revoke probation contained three charges: (1) that appellant had been convicted of disturbing the peace on November 30, 1972, in Sapulpa, Oklahoma; (2) that appellant was in physical control of a motor vehicle while intoxicated in Tulsa, Oklahoma, on March 24, 1973, and had refused to submit to a breath analysis test; and (3) that appellant had not satisfied his probation officer that he had complied with the terms and conditions of his probation, and that appellant by his conduct had not demonstrated a bona fide attempt to rehabilitate himself.

On September 21, 1973, four days after the motion to revoke probation was filed, a preliminary hearing was held in Omaha. The hearing was continued to September 28, 1973, in order to allow for further investigation and for appellant to adduce additional evidence. On September 28th, the hearing commissioner found probable cause to revoke appellant's probation. A final probation revocation hearing was then held in the state trial court on October 18 and 19, 1973, at which time probation was revoked and appellant was sentenced on Count II of the three original counts of motor vehicle homicide to imprisonment for one to ten years and on Count III to one year of imprisonment to run concurrently.

On appeal to the Nebraska Supreme Court, appellant attacked the probation revocation, claiming, *inter alia,* deprivation of due process. That court affirmed the decision of the state trial court. *State v. Kartman,* 192 Neb. 803, 224 N.W.2d 753 (1975). Appellant then filed his petition for a writ of habeas corpus in the District Court. The District Court denied the petition, stating that, although the court found "that the state committed errors in the revocation proceedings, the errors were not prejudicial to the petitioner". *Kartman v. Parratt,* 397 F.Supp. 531, 532 (D.Neb.1975).

### I. Vagueness of Third Charge

The third charge of the revocation information read as follows:

That Patrick C. Krell, the Chief Adult Probation Officer of the Fourth Judicial District is of the opinion that the defendant has failed to comply with the terms and conditions of his probation and that by his conduct he has failed to demonstrate a bona fide attempt to rehabilitate himself. The above cited conduct occurred during the period of the defendants probation which commenced on October 2, 1972 and remains in effect.

We agree with the District Court that this charge was impermissibly vague. It failed to apprise the appellant of the conditions of probation which he was alleged to have violated and of the dates and events supporting the charge. The court held, how-

ever, that since the second charge (physical control of a motor vehicle while intoxicated) was alleged with sufficient specificity and was proved by clear and convincing evidence, "the insufficiency of the third allegation was harmless beyond a reasonable doubt." 397 F.Supp. at 534. We agree with the District Court that if this error in the state revocation proceeding was harmless error and not prejudicial, habeas corpus relief is not warranted. *See United States ex rel. Blassingame v. Gengler,* 502 F.2d 1388 (2d Cir. 1974). *Cf. Lambur v. Chew,* 356 F.Supp. 751, 753 (E.D.Va.1973). Thus, the fact that the third charge was impermissibly vague will not justify relief if revocation on either of the first two charges was proper. Additionally, the introduction of any evidence relating to the third charge would be harmless error since such evidence would have likely been admissible on the issue of the sanction to be imposed. *See People v. Johnson,* 43 A.D.2d 878, 351 N.Y. S.2d 32 (1974). *See* point VIII, *infra.*

## II. *Location and Timeliness of Hearing*

*Morrissey* recognized two important stages in the typical process of parole revocation:

> The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked.

408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496. The Court noted that there was "typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked." *Id.* It also noted the possibility that there may be some distance between the place of arrest and the institution to which the parolee is returned pending final decision. It was the time lag and distance factors, each of which could have an impact upon the integrity of the fact finding process, which prompted the Court to require a preliminary "probable cause" inquiry before the parolee was returned to the institution to await a final determination.[2] Accordingly, the Court held:

> Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.

*Id.*

Appellant contends that the preliminary hearing should have taken place in Oklahoma where the probation violations occurred. In expounding the requirement that the initial hearing be near the place of the alleged violation "or arrest" the Supreme Court was plainly speaking of arrests for parole violation and not arrests for the offense itself.[3] While the arrest may normally be expected to occur in the vicinity of the violation, in this case the procedural circumstances are somewhat unusual.

Appellant was arrested in Omaha on July 9, 1973, under the first probation violation information, which charged violations of Nebraska law on July 5, 1973. Had the state proceeded on the Nebraska offenses, it seems unlikely that any challenge would have been made to the place or time of hearing. However, a superseding motion to revoke probation was filed on September 17, 1973. It charged two separate violations of law in Oklahoma and separately charged a continuing failure to comply with conditions of probation. It is not clear whether the third charge was intended to

---

**2.** An additional factor, discussed more fully in *Gagnon v. Scarpelli,* 411 U.S. 778, 782–83 n. 5, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662 (1973), is the expense of producing witnesses to the violation at a distant institution. Alternatives to live testimony as well as holding both the preliminary and final hearings at the place of violation are recognized as ways to meet this

problem. *Id.* Obviously, if no probable cause is shown or a decision not to revoke is made before removal, the state will have been saved a substantial expense and the parolee will have been spared a substantial inconvenience.

**3.** "The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer." *Morrissey v. Brewer,*

include the July 5, 1973, conduct,[4] and in any event the District Court properly held the third charge to be fatally defective for vagueness. Under ordinary circumstances, it would seem preferable to hold the preliminary hearing reasonably near the place of the violation chiefly relied upon. *Cf. Hyser v. Reed,* 115 U.S.App.D.C. 254, 318 F.2d 225, 243, *cert. denied,* 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963) (defining minimal procedures under federal statute). The circumstances of this case do not suggest any conscious effort of the state to deprive appellant of the advantages of a hearing in Oklahoma, but rather reflect a continuance of a process properly initiated in the first instance in Omaha. Since the Omaha violation ceased to be the offense chiefly relied upon prior to the preliminary hearing, we must next inquire whether, under these circumstances, appellant has shown any prejudice from holding the initial hearing in Omaha rather than Oklahoma where the other violations were alleged to have occurred. Appellant does not contend that he sought to have his preliminary hearing held in Oklahoma. There is no showing in the record that the place of hearing in any way hampered appellant, and in fact no such prejudice was specifically alleged.

We turn next to the time lag between the events alleged in the first two charges and the preliminary hearing. The conduct upon which the first two charges of the revocation notice were based took place ten months and six months, respectively, before the preliminary hearing was held.[5] Appellant contends that this delay was impermissible under *Morrissey* and that the state had notice of the relevant conduct since the appellant informed his probation officer of the events.

 While the Sixth Amendment speedy trial provision does not apply to parole or probation proceedings, this does not mean that the due process clause does not require a prompt and timely hearing in such proceedings. *See Cooper v. Lockhart,* 489 F.2d 308, 312–13 (8th Cir. 1973). Delay can result in "[d]im memories and disappearance of witnesses [which] can well affect the outcome of a parole revocation hearing as much as any criminal trial." *Id.* Analogizing to cases of preindictment delay, we must balance the reasonableness of the delay against any resulting prejudice to the appellant. *See United States v. Jackson,* 504 F.2d 337, 339 (8th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). *Cf. United States ex rel. Blassingame v. Gengler, supra.* The reason for the delay was apparently to allow appellant another "chance" and thus not immediately abandon the rehabilitation process. The exercise of such discretion by the state is not unreasonable. If the parole or probation officer is not accorded some discretion, the entire process may become less flexible and ultimately "the hearing body may be[come] less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation." *Gagnon v. Scarpelli, supra,* 411 U.S. at 788, 93 S.Ct. at 1762, 36 L.Ed.2d at 665. The appellant has alleged no specific prejudice which resulted from this delay. His general allegations of "lost" witnesses are not sufficient. *Cf. United States v. Atkins,* 487 F.2d 257, 259 (8th Cir. 1973). There is no showing that appellant was deprived of any specific evidence which might have been available to him at an earlier time. The peace disturbance conviction, for example, was a matter of public record. The purpose of the preliminary hearing was only to determine probable cause and was not an adjudication of the ultimate facts. We cannot say that appellant was deprived of due process by the

---

408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496 (1972).

4. Appellant was acquitted of such charges in Omaha Municipal Court prior to the filing of the superseding motion.

5. The peace disturbance conviction occurred on November 30, 1972. The physical control of a motor vehicle while intoxicated offense occurred on March 24, 1973. The preliminary hearing was initially held on September 21, 1973. The hearing on the original information had commenced on July 9, 1973, the day of its filing, but was continued.

delay in holding the parole revocation hearing in these circumstances.

### III. *Notice of Hearings*

■ Appellant contends that the holding of the preliminary hearing only four days after the giving of notice was too soon since his attorney had other matters in which he was involved. We note, however, that the initial preliminary hearing on September 21st was continued for a week to allow counsel to prepare further and secure more evidence. No prejudice was alleged or shown.

■ Appellant also contends that he did not receive proper notice of the final hearing since he did not receive a copy of the preliminary hearing officer's report until the day of the final hearing or other written notice of the final hearing after the preliminary hearing. *Morrissey* required that "written notice of the claimed violations" be given prior to the final hearing. 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. Here, that notice was given in the form of the written notice of the preliminary hearing which appellant received. This notice satisfied the due process requirement at the final hearing since the grounds for revocation remained unchanged following the preliminary hearing.

### IV. *Independent Decision Maker*

Appellant complains that the state judge at his final revocation hearing was not independent as is required by *Morrissey*. In *Morrissey*, the Court required the hearing to be before a " 'neutral and detached' hearing body". 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

Appellant relies upon an affidavit of a deputy county attorney attesting to the fact that the judge refused to dismiss the first probation violation information except on the condition that a new information be filed. He contends that this action impermissibly involved the judge in the prosecutorial function.

■ The District Court found that the state trial judge had acted upon his authority in the interest of justice to require a proper information to be substituted for the information which the prosecutor sought to dismiss. *See* Neb.Rev.Stat. § 29–1606. This statute requires court approval for dismissal of an information once it is filed. *State v. Sanchell,* 191 Neb. 505, 510, 216 N.W.2d 504, 508 (1974). We agree with the District Court that the state judge did not abuse his discretion in this case given the gravity of the original offense.

■ Appellant also contends that the county attorney was improperly ordered by the judge at the final hearing to investigate and to adduce evidence of matters not formally charged. These contentions are without merit. Our review of the record satisfies us that the state judge was attempting to secure further clarification of some sketchy testimony by the appellant's probation officer relating to nonpayment of child support and alimony and of reports that he had heard concerning another judicial hearing concerning the appellant. The state judge was careful to refrain from making an independent investigation on his own and was seeking help from the parties. We can see no evidence of bias, prejudice, or arbitrary conduct in these actions.

### V. *Right to Confront Adverse Witnesses*

■ Prior to the preliminary hearing, the state judge ordered that the appellant not be allowed to examine his probation file at the preliminary hearing. In *Morrissey*, the Court said:

> At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

408 U.S. at 487, 92 S.Ct. at 2603, 33 L.Ed.2d at 497. The hearing officer, obedient to the state judge's order, did not make the file available. We think that the state judge may have been unduly restrictive in the sense that a parolee or probationer should normally be given the names of those who have given information against him and an opportunity to confront them. *Morrissey* does not require any express written finding of risk of harm, however, and we will not assume such determination was not made, especially since the state judge's action was not shown to have prejudiced appellant at the hearing. The probation officer who initiated the revocation proceeding was available at the probable cause hearing and appellant was not denied a request to confront the officer. Moreover, the file was made available to appellant at the final hearing. In the cases relied upon by appellant, the probationer or parolee was denied the right to see the file before the *final* hearing.[6] In this case, that right was granted and there was no prejudicial error.

## VI. *Adequacy of Written Reports*

■ Appellant contends that the reports issued after both the preliminary and final hearings were inadequate. In *Morrissey,* the Court said in addressing the requirements applicable to the preliminary hearing:

> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. * * * As in *Goldberg,* "the decision maker should state the reasons for his determination and indicate the evidence he relied on . . . ." but it should be remembered that this is not a final determination calling for "formal findings of fact and conclusions of law."

6. *See State v. Seymour,* 21 Ariz.App. 144, 517 P.2d 102 (1973); *In re Love,* 11 Cal.3d 179, 113 Cal.Rptr. 89, 520 P.2d 713 (1974); *People v. Adams,* 47 A.D.2d 928, 367 N.Y.S.2d 67 (1975). The other cases cited by appellant did not in-

408 U.S. at 487, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. The preliminary report of the hearing officer sets forth the facts of hearing, notice, appearances, reporting, introduction of unspecified exhibits, and a reference to appellant's trial in Tulsa being scheduled in early October. The report is not in literal compliance with *Morrissey* in that it did not summarize "what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position." 408 U.S. at 487, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. On the other hand, the appellant was at all times represented by counsel, and the proceedings were reported and a transcript thereof could have been obtained. Reference thereto is contained in the report. The hearing officer did make the required probable cause finding.

■ Moreover, the appellant has alleged no demonstrable prejudice, and we can perceive none. The appellant was fully informed of the charges which he would be required to meet at the final hearing in the written notice given him on September 17, 1973. At the final hearing, he did present a competent defense to the first two charges. While the report was inadequate in terms of reasoning, there was no prejudicial error.

■ With respect to the final hearing, *Morrissey* requires "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. In this case, the state judge noted that one of the conditions of appellant's probation was that the appellant "refrain from unlawful conduct." He then referred to the Oklahoma accident, an instance of unlawful conduct. Since the Oklahoma accident was properly cited in the report as a reason for revocation, the final report was adequate although the question is a close one. The purpose of the written statement is to allow

volve the denial of an opportunity to see the probation file but either dealt with the lack of an opportunity to cross-examine witnesses or did not involve a probation report at all.

the reviewing court to determine whether there was a factual basis for revocation and to provide a probationer with a record of the proceedings so as to protect him from a second revocation proceeding based on the same conduct. The court's findings served this purpose, and, while meager, were sufficient for appellate review.

## VII. *Requirement of Prior Conviction*

 Appellant contends that since he has not yet been convicted of a crime with respect to the conduct in Tulsa (the second charge), that conduct cannot form a basis for revocation. The general rule is, however, that probation can be revoked before or without a conviction. *See United States v. Webster,* 161 U.S.App.D.C. 1, 492 F.2d 1048, 1051 (1974); *Amaya v. Beto,* 424 F.2d 363, 364 (5th Cir. 1970); *United States v. Markovich,* 348 F.2d 238, 240 (2d Cir. 1965). *See also Gross v. Bishop,* 377 F.2d 492, 495 (8th Cir. 1967).[7] Proof of misconduct does not depend upon the result of a criminal trial. In fact, conduct not amounting to a crime may serve as a basis for revocation.

## VIII. *Whether Acquittal Precludes Revocation*

 Appellant contends that evidence of defrauding the innkeeper should not have been admitted since he was acquitted on the charge arising out of the incident and that his revocation was possibly based on that evidence. We do not need to decide whether the prior acquittal on a criminal charge precludes the revocation of probation based on the same conduct since the probation revocation was not based on the events of the alleged crime. Any error in the admission of testimony concerning those events was harmless in light of the

7. *But see Note, Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations,* 74 Mich.L.Rev. 525 (1976). Concern for protection of the probationer's Fifth Amendment rights is minimal in this case, since appellant testified in his own behalf.

8. We recognize that these hearings occurred shortly after the decision in *Gagnon* making

evidence of the independent Oklahoma violations. Such evidence has been held admissible on the sanction issue. *See People v. Johnson, supra. See generally* R. Lowenstein, *Bringing the Rule of Law to Parole,* 8 Clearinghouse Review 769, 772–73 (1975).

### *Conclusion*

To sum up, the procedural shortcomings in appellant's preliminary and final revocation hearings disclosed in the record before us as a whole were not of prejudicial magnitude and do not warrant habeas corpus relief. We therefore affirm the judgment of the District Court.[8]

procedural rights of parolees under *Morrissey* applicable to probation revocation hearings. We think it appropriate to note for the future, however, that a less restrictive attitude toward procedural rights than was demonstrated in this case would comport more with the spirit of *Morrissey* and *Gagnon* and do more to avoid the necessity of appeals of the type engendered here.