NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CASEY BRIAN SWIER, *Appellant*.

No. 1 CA-CR 14-0209
FILED 7-2-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-151300-001
The Honorable Phemonia L. Miller, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Spencer D. Heffel
*Counsel for Appellant*

Casey Brian Swier
*Appellant*

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

**P O R T L E Y**, Judge:

¶1 This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Defendant Casey Brian Swier has advised us that after searching the entire record he has been unable to discover any arguable questions of law, and has filed a brief requesting us to conduct an *Anders* review of the record. Swier was given the opportunity and filed a supplemental brief.

**FACTS[1]**

¶2 Phoenix Police Officers Paprocki and Stevens responded to a call from a Super 8 Motel about a motel guest who stayed past the 11:00 a.m. checkout time on June 8, 2012. The motel staff told the police that Swier was not responding to their knocking on his door after the one hour checkout grace period. Officer Paprocki knocked on Swier's door several times before Swier answered. Because Swier looked "groggy" and "disoriented," Officer Paprocki asked him to sit on the bed so he would not fall while the officers talked to him.

¶1 While they were talking with Swier, Officer Paprocki saw a vial fall from the bed that Swier covered with his foot. The officer asked Swier to move his foot and saw a small vial filled with yellow powder. Swier said the powder was bath salts, and he had used some earlier. The officers also found small straws on a table, which Swier said he used to ingest the substance.

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

¶2        The officers confiscated the substance for testing and let Swier leave. Sometime later, a forensic scientist tested the yellow powder using a mass spectrometer gas chromatograph and found that it was methamphetamine.

¶3        Swier was charged with possession or use of dangerous drugs, a class 4 felony, and possession of drug paraphernalia, a class 6 felony. Swier moved to suppress the evidence from the motel room, arguing that the police violated his Fourth Amendment rights by entering the motel room without probable cause. The trial court, after an evidentiary hearing, denied his motion.

¶4        The jury found Swier guilty of both counts, and also found, as an aggravating circumstance, that Swier committed the offenses while he was on probation. Swier was subsequently sentenced to four and one-half years in prison for the possession or use of dangerous drugs and a concurrent one year and nine months for possessing drug paraphernalia. He was also given forty days of presentence incarceration credit.

¶5        We have jurisdiction over this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[2]

## DISCUSSION

¶6        In his supplemental brief, Swier argues that the trial court erred in denying his motion for acquittal and raises four issues for our consideration. He contends there was insufficient evidence to support a guilty verdict because: (1) he was not administered a blood test; (2) Officer Stevens did not write an incident report; (3) officers were unable to complete an initial test on the substance the police seized from his hotel room;[3] and (4) the forensic scientist testified that substance was bath salts.

¶7        Because Swier did not raise any of the first four issues with the trial court before his appeal, we will review them for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999).

---

[2] We cite the current version of the applicable statutes absent changes material to this decision.

[3] In his brief, Swier contends that an officer tested the substance initially, but this test came back as "inconclusive." Officer Paprocki, however, testified without contradiction that the substance was not initially tested in the motel room.

Fundamental error is "error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). To prevail under fundamental error, an appellant must establish "both that fundamental error exists and that the error in his case caused him prejudice." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 607 (2005).

**¶8** Although Swier contends the police did not draw blood and test it, he did not point to any statute, rule, or case law requiring the police to administer a blood test. *See* ARCAP 13(a)(7)(A) (requiring appellant to include "citations to legal authorities and appropriate references to the portions of the record on which the appellant relies"). If he had been driving and appeared to be impaired, the police could have asked for his consent or obtained a warrant to draw his blood to determine if he had alcohol or drugs in his system that might be causing his impairment. But, here he was not driving and there is no requirement that the State demonstrate that he was intoxicated at or near the time of his arrest.

**¶9** Instead, while the officers were talking with him in his motel room, one officer saw the vial roll off the bed and that Swier was trying to hide it under his foot. Swier, however, voluntarily removed his foot when asked by the police, identified the substance as bath salts, and admitted that he had ingested the substance with the straws on the table. Consequently, neither the police nor the State needed to prove that he was intoxicated before he could be convicted of possessing or using a dangerous drug beyond a reasonable doubt. *See State v. Cheramie*, 218 Ariz. 447, 450, ¶ 17, 189 P.3d 374, 377 (2008) (concluding that the State must only prove a defendant knowingly possessed narcotics in order to convict him for possession or use of dangerous drugs); *see also* A.R.S § 13-3407(a)(1) (2011) ("possess" and "use" are separated by "or," signifying that proof of either may satisfy the statute); A.R.S. § 13-105(35) (2012) (defining "possession" as a "voluntary act if the defendant knowingly exercised dominion or control over property").

**¶10** Swier also contends that one of the officers did not write a report. He, however, does not point out where it is required, how it was error or that it was prejudicial. *See* ARCAP 13(a)(7)(A). The purpose of the police report is to help the prosecutors determine what charges to file. Once the charges are filed, the report is provided to the defense to understand how the police perceived the events. *See State v. Seymour*, 21 Ariz. App. 144, 146, 517 P.2d 102, 104 (1973). The defense can also use the report to attempt to impeach the officers during trial if their testimony is inconsistent with

any police report.  *See State v. Ashton*, 95 Ariz. 37, 39, 386 P.2d 83, 85 (1963); *State v. Preciado*, 15 Ariz. App. 114, 116-17, 486 P.2d 226, 228-29 (1971).  And, if need be, the report can also be used by the officer at trial to refresh his or her memory given that the report is written soon after the events and any trial takes place months or years later.  *State v. Smith*, 215 Ariz. 221, 229, ¶ 29, 159 P.3d 531, 539 (2007); Ariz. R. Evid. 803(5).

**¶11**        Moreover, police reports cannot be admitted as evidence.  *Smith*, 215 Ariz. at 229, ¶ 28, 159 P.3d at 539 (finding police reports to be hearsay and therefore inadmissible unless qualifying under a hearsay exception) (citation omitted); *see also* Ariz. R. Evid. 802, 803.  The jury has to listen to the witnesses, including cross-examination, determine the credibility of the witnesses and consider any relevant physical evidence.  *See State v. Lehr*, 201 Ariz. 509, 517, ¶ 24, 38 P.3d 1172, 1180 (2002) ("It is a basic maxim that judges determine admissibility of evidence and juries decide what weight to give it.").  The jury then has to decide what the facts are and whether the State has proven each element of each charge beyond a reasonable doubt.  *Id.*; *In re Winship*, 397 U.S. 358, 364 (1970).  Consequently, and given the fact that Swier was able to cross-examine all the State's witnesses, the fact that only one officer wrote a report is not fundamental prejudicial error that requires a new trial.

**¶12**        Swier next contends that error was committed because a police officer was unable to field test the yellow substance in the hotel room.  Although marijuana has a certain look and smell, as do some other drugs, there is no requirement or rule that the police field test anything found that may be drugs.  Although Swier told the police he had ingested bath salts, the police found the substance could not be field-tested.  As a result, the police collected the yellow powder and vial, maintained a chain of custody, and had the items delivered to a criminalist for forensic testing.  The key was that the scientific testing revealed that the yellow powder was methamphetamine, a dangerous drug.  Given that the testimony of the forensic scientist, along with the other evidence in the case, demonstrated the State's case to the jury beyond a reasonable doubt, we find no fundamental prejudicial error that requires a new trial.

**¶13**        Swier argues that the scientist testified that the yellow powder was not methamphetamine but bath salts.  Our review of the record reveals that the scientist clearly, and repeatedly, testified that her tests indicated that the yellow powder substance was methamphetamine and not bath salts.  Consequently, although Swier may have believed the yellow powder was bath salts, the testing did not support his belief, and the record does not reveal fundamental prejudicial error.

¶14            Finally, Swier asserts the trial court erred by denying his motion for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20 because the State did not provide sufficient evidence to send the case to the jury or for the jury to return a guilty verdict.  We review a denial of a motion for judgment of acquittal de novo.  *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011) ("This question of sufficiency of the evidence is one of law, subject to de novo review on appeal.").

¶15            Here, the State charged Swier with possession of dangerous drugs and possession of drug paraphernalia.  To prove possession of dangerous drugs, the State was required to prove "that the defendant knowingly (1) possessed (2) a dangerous drug."  *Cheramie*, 218 Ariz. at 449, ¶ 10, 189 P.3d at 376; A.R.S. § 13-3407(A)(1).  And to prove possession of drug paraphernalia the State was required to prove the defendant knowingly (1) used or possessed with the intent to use; (2) drug paraphernalia; (3) "to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body [an illegal] drug."   A.R.S. § 13-3415(A); *Fitzgerald v. Superior Court In & For Cnty. of Maricopa*, 173 Ariz. 539, 547, 845 P.2d 465, 473 (App. 1992).

¶16            The jury heard testimony from both police officers and the forensic scientist.  Swier, by counsel, was able to cross-examine all of the witnesses.  The record, as a result, demonstrates that there was substantial evidence of possession of drug paraphernalia: there was a vial that contained a substance that later tested to be methamphetamine. Similarly, the record demonstrates that there was substantial evidence of possession of a dangerous drug: Swier, who appeared at the motel room door groggy and incoherent, had a container with a substance that later tested to be methamphetamine; there were no other occupants of the motel room; and after the vial fell off the bed, he tried to hide it with his foot, but admitted to the officer that he had ingested the substance, though he thought it was bath salts.  The evidence supported the trial court's ruling, and we find no error.[4]

---

[4] Swier also contends that the court erred because bath salts were legal at the time of the incident.  Not all bath salts were legal, however, because the Arizona Legislature passed a law with an emergency provision effective February 17, 2012, that made several compounds used to make bath salts illegal in A.R.S. §§ 13-3401(6)(b)(v)-(xxxvii), 36-2515(A)(1)(n)-(t).  *See* 2012

¶17        We have read and considered counsel's brief, as well as Swier's arguments in his supplemental brief, and have searched the entire record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find no reversible error.   All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  The record, as presented, reveals that Swier was represented by counsel at all stages of the proceedings, and the sentences imposed were within the statutory limits.

¶18        After this decision is filed, counsel's obligation to represent Swier in this appeal has ended.  Counsel must only inform Swier of the status of the appeal and his future options, unless counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Swier may, if desired, file a motion for reconsideration or petition for review pursuant to the Arizona Rules of Criminal Procedure.

**CONCLUSION**

¶19        Accordingly, we affirm Swier's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

Ariz. Sess. Laws, ch. 1 (2d Reg. Sess.); House of Representatives Fact Sheet for H.B. 2356, 50th Legis., 2d Reg. Sess. (2012).   Regardless, Swier's argument fails because the substance he thought was bath salts was scientifically determined to be methamphetamine.