588 P.2d 294

**The STATE of Arizona, Appellee,**

v.

**Ruben Morales MELENDEZ, Appellant.**

Nos. 3768, 3845.

Supreme Court of Arizona,
In Banc.

Oct. 30, 1978.

Rehearing Denied Dec. 5, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen., by William J. Schafer III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Robert L. Storrs, Phoenix, for appellant.

CAMERON, Chief Justice.

Ruben Morales Melendez, the defendant herein, appeals from a jury verdict and judgment of guilt to the crime of first degree murder, A.R.S. § 13–452, and a sentence of death. We have taken jurisdiction pursuant to A.R.S. § 13–1711 and Rule 26.-15, Rules of Criminal Procedure, 17 A.R.S.

We are asked to answer the following questions on appeal:

1. Did the trial court's refusal to ask the jury panel four of the defendant's requested voir dire questions constitute reversible error?

2. Did the trial court commit reversible error in denying the defendant's motion to sever?

3. Was the defendant erroneously precluded from attacking the credibility of the State's chief witness by showing that his testimony shielded him from the possibility of receiving the death penalty or life imprisonment for his own participation in the homicide?

4. Did the trial court err in refusing to allow the defendant to cross-examine the State's chief witness regarding whether the polygraph examiner's conclusion regarding the veracity of some of his answers caused him to change his story?

5. Did the trial court commit reversible error in denying the defendant's motion for mistrial based on a juror's observation of the defendant in handcuffs?

6. Was the jury erroneously instructed not to consider the effect of intoxication on the defendant's ability to form the requisite intent for the crime of murder by torture?

7. Did the trial court erroneously refuse to give the defendant's requested instruction and verdict form for voluntary manslaughter?

8. Did the trial court commit reversible error in refusing to give the defendant's requested jury instructions on second degree murder, proximate cause and aggravated assault?

9. Is the Arizona death penalty statute constitutional and if so was the death penalty inappropriately imposed upon the defendant?

Defendant Melendez was tried jointly with the codefendant Joe Cota Morales. The facts of the case are contained in the opinion in *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978).

## REFUSAL TO USE THE DEFENDANT'S REQUESTED VOIR DIRE QUESTIONS

The defendant contends that the trial court committed reversible error in refusing to ask the jury panel questions submitted by the defendant regarding the testimony of the accomplice, the prior felony conviction of the defendant, the feelings of the jury about murder by torture, and the gruesome nature of the evidence.

Rule 18.5 of the Rules of Criminal Procedure, 17 A.R.S., places the responsibility for conducting the voir dire examination of the prospective jurors on the court. The trial court's duty is to ask the prospective jurors any questions it deems necessary to determine their qualifications and to enable the parties to exercise intelligently their peremptory challenges and challenges for cause. Rule 18.5(c), (d), (e), Rules of Criminal Procedure, 17 A.R.S. The purpose behind the provisions of Rule 18.5 is to give the trial court authority to limit the scope of examination to those questions reasonably designed to expose possible prejudices on the part of the jurors. As stated in the Comment to the rule:

"Subsection (e), and the shift of *voir dire* responsibility to the court, are intended to remove entirely the practice of some attorneys of 'conditioning' the jury by means of questions and argument which amount to preliminary instructions on the law and facts of the case."

We have studied the transcript of the trial court's voir dire of the prospective jurors. The defendant's questions do not appear designed to uncover juror's prejudices. Rather, they appear to us to be more designed to condition the jurors to damaging evidence expected to be presented at trial and to commit them to certain positions prior to receiving the evidence. Such is not a legitimate function of voir dire questions. The scope of the voir dire examination is left to the sound discretion of the trial court and as long as there is no abuse of that discretion, error will not be found on appeal. *State v. Smith*, 114 Ariz. 415, 561 P.2d 739 (1977). It was not error "* * * to refuse to ask the requested questions."

## DENIAL OF THE MOTION TO SEVER

When it was learned during the course of the trial that codefendant Morales did not intend to take the stand in his own defense, counsel for defendant Melendez sought a severance of the trials of the two defendants on the ground that his client's Sixth Amendment right to counsel imposed a duty upon him as counsel to attempt to persuade the jury to draw an inference of guilt from Morales' silence, but that he would be precluded from doing so by Morales' constitutional right, as a defendant in the case, to remain silent. Only if the cases were severed, argued counsel, would Melendez be able to call Morales as a witness and, if Morales refused to testify, comment on such refusal and the likely reasons for it. The trial court denied the motion to sever and Melendez claims reversible error.

Under Rule 13.4(a) of the Rules of Criminal Procedure, 17 A.R.S., a trial court must grant a requested severance if it appears "necessary to promote a fair determination of the guilt or innocence of any defendant," and Rule 13.4(c) allows the motion to be made during trial if the grounds for a motion to sever were not previously known. Since this matter will be remanded for retrial, the motion can be made again, but before trial commences and based upon the facts that were developed in this trial. The court can then rule based upon a more complete factual basis. See *State v. White*, 115 Ariz. 199, 564 P.2d 888 (1977).

## RESTRICTION ON THE RIGHT TO CROSS-EXAMINE

Defendant contends it was reversible error to preclude him from attacking the credibility of the witness Cruz Martinez by showing that by his testimony he was escaping the possibility of a penalty of death or life imprisonment. We agree. We have discussed this issue at length in the companion case of *State v. Morales*, supra, filed this day. There we held it was reversible error to unduly restrict the right of

**4**

cross-examination. The same result obtains here and the matter will have to be reversed and remanded for new trial.

## EXCLUSION OF POLYGRAPH EXAMINATION

During the police investigation of this case, Cruz Martinez was given a polygraph examination. When the polygraph examiner questioned him concerning certain of his responses which the examiner felt were inaccurate or deceptive, Martinez changed his story in some respects. In preparing to impeach the credibility of Martinez' testimony at trial by cross-examining him on the changes in his story, counsel for defendant sought permission to include in his cross-examination inquiries concerning the polygraph examination. Such inquiries, he felt, would demonstrate the reason for the change in the witness's story and thus the unreliability of his testimony. The trial court ruled that evidence of the polygraph examination was inadmissible. Defendant Melendez contends that this ruling constituted a denial of his Sixth Amendment right of full cross-examination.

■ Absent a stipulation, e. g., *State v. Seebold*, 111 Ariz. 423, 531 P.2d 1130 (1975), evidence of or reference to a polygraph test is inadmissible for any reason. *State v. Marquez*, 113 Ariz. 540, 558 P.2d 692 (1976); *State v. Bowen*, 104 Ariz. 138, 449 P.2d 603 (1969), cert. den. 396 U.S. 912, 90 S.Ct. 229, 24 L.Ed.2d 188 (1969); *State v. Valdez*, 91 Ariz. 274, 371 P.2d 894 (1962).

■ The inadmissibility of polygraph tests applies to parties and witnesses alike. *Valdez*, supra. We note that Melendez was otherwise free to and did interrogate Cruz Martinez regarding the changes in his story, but only reference to the polygraph examination was excluded. Melendez was not prejudiced and we find no error.

## DENIAL OF MOTION FOR MISTRIAL BASED ON A JUROR'S OBSERVATION OF THE DEFENDANT IN HANDCUFFS

On the morning of the sixth day of trial, counsel for defendant made a motion for mistrial based upon the defendant's uncontested avowal that after adjournment on the previous afternoon, one of the jurors had observed him and his codefendant being escorted back to jail while handcuffed together and had, in fact, crossed the street with them. The trial court denied the motion for mistrial and the defendant contends on appeal that this denial constituted reversible error.

Since this matter will have to be retried, we do not need to discuss this matter on appeal as it is not likely to occur again.

## INSTRUCTIONS ON THE EFFECT OF INTOXICATION

There was ample evidence that both defendants had been drinking heavily prior to and during the crime. Defendant requested an instruction on intoxication which was refused. Defendant Melendez contends on appeal that this was reversible error. We agree.

■ We have discussed this issue in the companion case of *State v. Morales*, supra, filed this day, and we there held it was reversible error to not instruct on voluntary intoxication based upon the facts in this case. We so hold in this case.

## INSTRUCTION ON VOLUNTARY MANSLAUGHTER

■ Defendant Melendez also contends it was error not to instruct on voluntary manslaughter. This question was also considered in the companion case of *State v. Morales*, supra, filed this day. We found no error as to Morales and we find no error as to the defendant Melendez.

## REFUSAL TO GIVE DEFENDANT'S REQUESTED INSTRUCTIONS ON SECOND DEGREE MURDER, PROXIMATE CAUSE AND AGGRAVATED ASSAULT

a. Second degree murder

■ In addition to the requested instruction on intoxication, the defendant contends

that the trial court also committed reversible error in refusing, over timely objection, to give his requested jury instruction dealing with second degree murder. We do not believe the trial court erred in this regard because the record indicates that it gave another and adequate instruction covering second degree murder. A trial court may properly refuse to give a requested instruction where the substance of that instruction is covered by another instruction given by the trial court. *State v. Stevens*, 107 Ariz. 565, 490 P.2d 571 (1971). We find no error.

### b. Proximate cause

Counsel for Melendez requested seven separate instructions relating to proximate cause, all of which were refused. On appeal, counsel concedes that he was not entitled to have all of these instructions given to the jury, but maintains that he was entitled to at least some of them since one of his chief theories of defense was that Melendez' conduct, though reprehensible, did not contribute to the victim's death.

A defendant is entitled to have the jury instructed on any theory of his case reasonably supported by the evidence, *State v. Miller*, 108 Ariz. 441, 501 P.2d 383 (1972), but instructions need not be given if their substance is covered by other instructions given by the trial court.

The unchallenged opinion of the medical examiner was that the direct cause of the victim's death was internal bleeding resulting from stab wounds to his chest. The medical examiner further testified, however, that all of the other injuries the victim sustained, the position in which he was tied to the climbing device and the high level of alcohol in his blood (.31%) would have cumulatively caused his death within three or four hours, even in the absence of the multiple stab wounds. Among the significant non-stab injuries which would have contributed to the victim's death was a gash on the top of the victim's head which the medical examiner testified could have been caused by the blade of the hoe. While neither Cruz Martinez nor Melendez admitted to inflicting or being present during the infliction of any such hoe blow to the head, there is evidence that the victim was repeatedly kicked in the head by them or in their presence. Testimony is conflicting as to whether Melendez rammed the hoe handle into the victim's rectum or otherwise used the hoe to beat or inflict pain upon the victim. Testimony is also conflicting as to whether any stabbing of the victim was done in Melendez' presence. The evidence is clear, however, that Melendez hit and kicked the victim several times, that he helped carry him to the park, that he placed him on the merry-go-round and spun it around, that he sodomized the victim, that he participated or at least concurred in pouring paint on the victim, and that he helped place the victim on the climbing device.

The jury was properly instructed that the case involved two defendants; that the evidence as to each must be considered separately; that proof against one was not proof against another; and that one who participates in the crime is equally guilty with the actual perpetrator. The jury was also instructed that the State had the burden of proving the defendant did commit the act and intended to do so and that mere presence at the scene did not establish guilt.

We believe the instructions given adequately covered the question, reasonably raised by the evidence, of whether the element of causation had been satisfied by acts done or encouraged by Melendez. We find no error.

### c. Aggravated assault

The determination of whether the trial court erred in refusing to give the defendant's instructions relating to aggravated assault hinges on whether there is reasonable support in the evidence for defendant's contention that his conduct was not a proximate cause of the victim's death. Where the victim of an assault dies as a result of that assault, the trial court is not required to instruct on the lesser included offense of aggravated assault. *State v. Contreras*, 107 Ariz. 68, 481 P.2d 861 (1971);

see also *State v. Myers*, 59 Ariz. 200, 125 P.2d 441 (1942). Based upon the facts presented in this case, we find no error in refusing to give an instruction on aggravated assault.

CONSTITUTIONALITY OF ARIZONA'S DEATH PENALTY STATUTE AND THE PROPRIETY OF THE DEATH PENALTY IN THE INSTANT CASE

The defendant has made several attacks on the constitutionality of Arizona's death penalty statute. Because this case must be remanded for a new trial, we need not consider the questions regarding the death penalty at this time, but see *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978).

Reversed and remanded for proceedings not inconsistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.