SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-04-0208-AP |
| Appellee, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CR 95116 |
| JOE CLARENCE SMITH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Thomas W. O'Toole, Judge

**SENTENCES AFFIRMED AS MODIFIED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Capital Litigation Section
          Jon G. Anderson, Former Assistant Attorney General
Attorneys for State of Arizona

SUSAN M. SHERWIN, MARICOPA COUNTY LEGAL ADVOCATE          Phoenix
     By   Kerri L. Chamberlin, Deputy Legal Advocate
Attorneys for Joe Clarence Smith
_____

**R Y A N**, Justice

¶1      In 2004, Joe Clarence Smith was resentenced to death
for two murders committed in 1975 and 1976.  An automatic notice
of appeal was filed under Arizona Rules of Criminal Procedure
26.15 and 31.2(b) and Arizona Revised Statutes ("A.R.S.")
section 13-4031 (2001).  We have jurisdiction under Article 6,
Section 5(3), of the Arizona Constitution and A.R.S. § 13-4031.

¶**2**     On January 1, 1976,[1] the nude body of Sandy Spencer was found in the desert northwest of Phoenix. Her nose and mouth had been stuffed with dirt and taped shut, causing asphyxiation. Ligature marks on her wrists and ankles indicated that she had been bound before death and the ligatures had been removed after death. Before or near the time of death, Spencer also suffered nineteen stab wounds to the pubic region and a vaginal tear that was caused by penetration. She also had three stab wounds to her breasts and a sewing needle was found embedded in her left breast.

¶**3**     On February 2, 1976, Neva Lee's nude body was discovered in the desert near the Salt River Indian Reservation. She, like Spencer, had died from "asphyxiation due to airway obstruction with soil." Ligature marks were present on her wrists and ankles - a result of injuries suffered before death. She also had puncture and stab wounds to her chest, abdomen, and breasts and damage to her vulva.

¶**4**     In November 1976, a Maricopa County grand jury indicted Smith for two counts of first-degree murder. The superior court severed the counts, requiring separate trials. A

---

[1]   In 1976 Smith was on probation for two prior rape convictions. *See State v. Smith*, 116 Ariz. 387, 388, 569 P.2d 817, 818 (1977). Probation was revoked in September 1976 after his third rape conviction. *Id.* at 389, 569 P.2d at 819.

jury convicted Smith of first-degree murder on June 17, 1977, for the murder of Neva Lee.  Smith then pleaded guilty on July 7, 1977, to first-degree murder for the murder of Sandy Spencer. The superior court subsequently sentenced Smith to death on both counts.  This Court affirmed the convictions, but remanded for resentencing in light of *State v. Watson*, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978).  *State v. Smith* (*Smith I*), 123 Ariz. 231, 243, 599 P.2d 187, 199 (1979).[2]

¶5      At resentencing, Smith's counsel presented no new mitigation evidence and Smith was again sentenced to death.  On automatic appeal, the sentences were affirmed.  *State v. Smith* (*Smith II*), 131 Ariz. 29, 35, 638 P.2d 696, 702 (1981).

¶6      From 1984 through 1991, Smith filed a series of unsuccessful petitions for post-conviction relief.  Smith subsequently filed a habeas corpus petition in the United States District Court for the District of Arizona, which was denied.

¶7      On appeal, however, a divided panel of the Ninth Circuit held that Smith's counsel had been ineffective at the resentencing.  *Smith v. Stewart* (*Smith III*), 189 F.3d 1004, 1014

---

[2]     *Lockett v. Ohio* held that limiting the evidence that could be presented in mitigation in capital cases violates the Eighth and Fourteenth Amendments.  438 U.S. 586, 604-05 (1978). *Watson* accordingly held that A.R.S. § 13-454(F) (Supp. 1957-1978) unconstitutionally limited a defendant's ability to present mitigation evidence in a capital case.  120 Ariz. at 445, 586 P.2d at 1257.  Smith's death sentences, therefore, were vacated

(9th Cir. 1999). The majority concluded that counsel's failure to present more mitigation evidence after this Court had held that Arizona's mitigation statute was not limited to the listed statutory mitigating factors was equivalent to presenting no evidence in mitigation. *Id.* at 1009-11. The majority pointed to evidence of multiple personalities, other mental disorders, and good relationships as potential mitigating evidence that was not presented at the second sentencing proceeding. *Id.* at 1009-10. Believing that this evidence may have changed the mind of the sentencing judge, the court remanded the case to the district court with directions to vacate the death sentences and remand the cases for resentencing. *Id.* at 1013-14. On November 21, 2000, the federal district court issued an order in accordance with the Ninth Circuit's mandate.

¶8 The Maricopa County Superior Court held the first status conference on the case in December 2000. Because more than twenty-four years had passed since the commission of the murders, counsel for both sides required considerable time to gather evidence and prepare for the resentencing proceedings.

¶9 The Supreme Court's subsequent invalidation of Arizona's judge-sentencing procedure in capital cases caused further delay. *See Ring v. Arizona* (*Ring II*), 536 U.S. 584

---

to allow him to present further mitigation evidence. *Smith I*, 123 Ariz. at 243, 599 P.2d at 199.

4

(2002); *State v. Ring* (*Ring III*), 204 Ariz. 534, 65 P.3d 915 (2003). In response to *Ring II*, the Arizona Legislature "subsequently amended Arizona's death penalty statutes. The amended sentencing statutes assigned to juries the responsibility of finding aggravating circumstances and determining whether to impose the death penalty." *State v. Glassel*, 211 Ariz. 33, 42, ¶ 12, 116 P.3d 1193, 1202 (2005), *cert. denied*, 126 S. Ct. 1576 (2006) (citations omitted); *see also* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, §§ 1, 3.

¶10 The sentencing proceeding for the murder of Sandy Spencer finally began before a jury in April 2004.[3] In the aggravation phase, the State sought to prove the following aggravators: prior conviction for an offense punishable under Arizona law by a sentence of life in prison or death, A.R.S. § 13-454(E)(1) (Supp. 1957-1978); prior felony conviction that involved the use or threat of violence on another, *id.* § 13-454(E)(2); and the offense was committed in an especially heinous, cruel, or depraved manner, *id.* § 13-454(E)(6). In support of the (E)(1) aggravator, the jury heard testimony that Smith had previously been convicted of three counts of rape and sentenced to five years to life, ten years to life, and seventy-five years to life. The State used Smith's conviction for the

---

[3] The superior court denied the State's motion to consolidate the two counts.

murder of Lee to prove the (E)(2) aggravator. In support of the (E)(6) aggravator, the State offered testimony about the stab and puncture wounds to Spencer's body and the asphyxiation. The jury made separate findings that each aggravator had been proved beyond a reasonable doubt. As to the (E)(6) aggravator, the jury made additional findings that each prong – cruelty, heinousness, and depravity – had been proved.

¶11 In the penalty phase, the defense presented testimony about Smith's mental health, his behavior while in prison, his struggles with asthma, and his family life. The jury determined that Smith should be sentenced to death for the murder of Spencer.

¶12 The sentencing proceeding for the murder of Lee, which began on May 5, 2004, before a new jury, substantially mirrored the Spencer proceeding. The State again sought to prove the (E)(1), (E)(2), and (E)(6) aggravators. Testimony related to the three prior rape convictions and the Spencer murder was offered to prove the (E)(1) and (E)(2) aggravators, respectively. The State also offered testimony about the injuries to Lee and her cause of death to support the (E)(6) aggravator. The jury once again made separate findings that all three aggravators had been proved beyond a reasonable doubt, including each prong of the (E)(6) aggravator. The mitigation and rebuttal evidence in the penalty phase was substantially the

6

same as in the Spencer proceeding.  This jury also determined that Smith should be sentenced to death.

¶13    Accordingly, the superior court sentenced Smith to death by lethal injection on both counts.

**II**

¶14    Smith first argues that the trial court erred in denying a judgment of acquittal on the (E)(2) aggravator because first-degree murder, under A.R.S. § 13-452 (Supp. 1957-1978), did not necessarily require the use or threat of violence.[4] Because this issue concerns a question of law, our review is de novo. *See State v. McGill*, 213 Ariz. 147, 156, ¶ 40, 140 P.3d 930, 939 (2006), *cert. denied*, 127 S. Ct. 1914 (2007).

¶15    A prior felony conviction qualified as an aggravator under former A.R.S. § 13-454(E)(2) only if the elements of the offense – without regard to the underlying facts of the crime – required the use or threat of violence on another person.  *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983); *see also State v. Fierro*, 166 Ariz. 539, 549, 804 P.2d 72, 82 (1990) ("If, *under the statutory definition of the crime*, the defendant could commit or be convicted of the crime without the use or

---

[4]    The legislature has since foreclosed this argument by amending A.R.S. § 13-703(F)(2) (Supp. 2006) (formerly A.R.S. § 13-454(E)(2)).  1993 Ariz. Sess. Laws, 1st Reg. Sess., ch. 153, § 1.    The amended aggravator requires only that the prior conviction be for a "serious offense"; first-degree murder is expressly identified as such an offense, A.R.S. § 13-703(I)(1).

threat of violence, the prior conviction cannot qualify as a statutory aggravating circumstance."). Consideration of the underlying facts is impermissible because it would amount to a second trial. *Gillies*, 135 Ariz. at 511, 662 P.2d at 1018; *see also State v. Schaaf*, 169 Ariz. 323, 334, 819 P.2d 909, 920 (1991). Therefore, we focus on the language of the statute to determine whether first-degree murder necessarily required the use or threat of violence.

¶16    The statute in effect at the time of the murders defined first-degree murder as "murder . . . perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate or premeditated killing." A.R.S. § 13-452. Smith contends that "under the statutory definition, first degree murder could be committed by lacing a victim's food or drink with poison. A murder committed in this manner would not involve the use or threat of violence." We reject this contention.

¶17    Under A.R.S. § 13-454(E)(2), violence is defined as the use or threat of force with the intent to injure or abuse. *Fierro*, 166 Ariz. at 549, 804 P.2d at 82. We hold that even surreptitious poisoning involves the use of force. A person who uses poison to kill another person "intentionally avails herself of the physical force exerted by poison on a human body." *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 174-75

8

(2d Cir. 2006). Poison invades a victim's body, attacking vital organs, until it causes death. It is this result that an assailant seeks in choosing to poison his victim.

¶18 First-degree murder, as defined in A.R.S § 13-452, therefore cannot be committed without the use of force, whether that force be exerted by the defendant or by some instrumentality that the defendant has put to this use. Accordingly, we affirm the trial court's denial of Smith's motion for a judgment of acquittal on the (E)(2) aggravator because a prior first-degree murder conviction does establish this aggravator.[5]

### III

¶19 Smith next argues that the trial court erred by admitting hearsay testimony during the Lee aggravation phase, which violated the Confrontation Clause.[6] He also argues that

---

[5] Our previous cases are consistent with this result. We have upheld a finding of the (E)(2) aggravator based on prior first-degree murder convictions from California. *State v. Gretzler*, 135 Ariz. 42, 57, 659 P.2d 1, 16 (1983). California's first-degree murder statute in 1973, the year Gretzler committed the murders, stated that first-degree murder could be committed by poisoning. Cal. Penal Code § 189 hist. n. (West, Westlaw through 1987 legislation).

[6] The State correctly concedes that the Confrontation Clause applies when the evidence presented is used to prove an aggravator. *McGill*, 213 Ariz. at 159, ¶ 51, 140 P.3d at 942; *State v. Greenway*, 170 Ariz. 155, 161 n.1, 823 P.2d 22, 28 n.1 (1991).

this error cannot be harmless because this testimony was the basis of the (E)(6) aggravator.

¶20    A trial court's decision to admit evidence over objection is reviewed for an abuse of discretion. *State v. Hampton*, 213 Ariz. 167, 178, ¶ 45, 140 P.3d 950, 961 (2006), *cert. denied*, 127 S. Ct. 972 (2007). Legal and constitutional questions are reviewed de novo. *McGill*, 213 Ariz. at 156, 157-58, ¶¶ 40, 45, 140 P.3d at 939, 940-41.

**A**

¶21    First, Smith argues that the State's medical examiner, Dr. Keen, improperly relayed to the jury the previous medical examiner's findings and opinions. He claims that this testimony introduced inadmissible hearsay and violated his right to confront the previous medical examiner.

¶22    Rule 703 of the Arizona Rules of Evidence states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

¶23    Expert testimony that discusses reports and opinions of another is admissible under this rule if the expert reasonably relied on these matters in reaching his own conclusion. *State v. Rogovich*, 188 Ariz. 38, 41-42, 932 P.2d 794, 797-98 (1997); *State v. Villafuerte*, 142 Ariz. 323, 327,

10

690 P.2d 42, 46 (1984); *State v. Noleen*, 142 Ariz. 101, 104, 688 P.2d 993, 996 (1984). Such testimony is not hearsay because it is offered not to prove the truth of the prior reports or opinions, but rather is offered only to show the basis of the testifying expert's opinion. *See Rogovich*, 188 Ariz. at 42, 932 P.2d at 798; *State v. Lundstrom*, 161 Ariz. 141, 148, 776 P.2d 1067, 1074 (1989). A testifying expert, however, may not act as a "conduit for another non-testifying expert's opinion." *Lundstrom*, 161 Ariz. at 148, 776 P.2d at 1074. Smith contends, with respect to Dr. Keen's testimony on the cause of death, size of wounds, and timing of infliction, that Dr. Keen acted as a conduit for the prior medical examiner's opinion.

¶24    Smith's characterization of Dr. Keen's testimony is inaccurate. Dr. Keen formed his own conclusions based on the partial autopsy report,[7] photographs of Lee's body, and the testimony of the prior medical examiner, all of which would normally be relied upon by a medical examiner to make independent determinations about injuries and causes of death. Dr. Keen referred to some of the testimony of the prior medical examiner, but he did so because it helped form the basis for his own conclusions and observations. His testimony about the injuries Lee suffered was based on his independent verification

---

[7]    Except for the cover page, the original medical examiner's report of the Lee autopsy could not be found.

11

of those injuries from the photographs taken in 1976.  Further, he independently concluded that the ligatures were placed on the wrists and ankles before death, the cause of death was asphyxiation, and the stab wounds were inflicted near the time of death.  Dr. Keen discussed the prior medical examiner's testimony about the location and size of the wounds because he used that information to determine that none of the other wounds would have caused Lee's death; therefore, he concurred with that medical examiner's determination that the cause of death was asphyxiation.

¶25     Thus, Dr. Keen was not a mere conduit for the opinions of the prior medical examiner; rather, his ultimate opinions were independent of the testimony of the prior medical examiner.  Because the underlying data and opinions were used to show the basis for these conclusions, and not to prove the truth of the matters asserted, there was no hearsay problem.  *See Rogovich*, 188 Ariz. at 42, 932 P.2d at 798; *Lundstrom*, 161 Ariz. at 148, 776 P.2d at 1074.

¶26     There was also no Confrontation Clause violation.  We have previously held:

> Facts or data underlying the testifying expert's opinion are admissible for the limited purpose of showing the basis of that opinion, not to prove the truth of the matter asserted.  Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay and does not violate the confrontation clause.

12

*Rogovich*, 188 Ariz. at 42, 932 P.2d at 798 (citation omitted). The Supreme Court has made plain that the Confrontation Clause is not violated by use of a statement to prove something other than the truth of the matter asserted. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985). Therefore, Smith's confrontation right was not violated by Dr. Keen's testimony.

**B**

¶27    Smith also raises hearsay and Confrontation Clause claims because Detective Dominguez testified to statements made by the prior medical examiner during the autopsy of Lee, which were recorded in a police report.

¶28    Because both the police report and the statements of the medical examiner who conducted the autopsy are hearsay, each must independently qualify under a hearsay exception to be admissible. Ariz. R. Evid. 805. Here, each clearly falls within an exception.

¶29    A testifying witness may use a memorandum or record to testify if the witness had knowledge of the matter referred to in the memorandum or record at one time, but no longer has sufficient memory to testify fully; the witness made or adopted the memorandum or record when the matter was fresh in the

13

witness's memory;[8] and the memorandum or record correctly reflects the knowledge the witness had.  Ariz. R. Evid. 803(5).

¶30      Although he no longer recalled specific details of the autopsy, Detective Dominguez testified that he remembered the medical examiner pointing out the trauma areas and relaying the measurements, which his partner then wrote down.[9]  Detective Dominguez adopted the report as his own by signing it shortly after it was created.  At the same time, he reviewed the report for accuracy and believed that it accurately reflected the information that had been given by the medical examiner at the autopsy.  Therefore, the detective's use of the report met the requirements of Arizona Rule of Evidence 803(5).

¶31      The medical examiner's statements also fall under a hearsay exception.  Statements qualify as a present sense impression if they "describe an event or condition, that was perceived by the declarant, and the statement [is] made immediately after [or contemporaneous with] the event."  *State v. Tucker*, 205 Ariz. 157, 166, ¶ 43, 68 P.3d 110, 119 (2003);

---

[8]      The memorandum need not be made by or at the direction of the witness.  "It is sufficient if the witness read the memorandum at a time when his memory was fresh and recognized that it accurately recorded the event."  1 Joseph M. Livermore, Robert Bartels & Anne Holt Hameroff, *Arizona Practice: Law of Evidence* § 803.5, at 360 (4th ed. 2000).

[9]      Detective Dominguez and his partner were present for the entire autopsy of Lee.

14

*see also* Ariz. R. Evid. 803(1). The medical examiner's statements are present sense impressions because they describe the condition of the body, were made by the person perceiving the information, and were made as he perceived the conditions.[10] Accordingly, Detective Dominguez's testimony was not inadmissible hearsay.

¶32    Smith's Confrontation Clause claim with respect to Detective Dominguez's testimony turns on whether the statements made by the medical examiner during the autopsy were "testimonial." *See Davis v. Washington*, 126 S. Ct. 2266, 2274 (2006) (citing *Crawford*, 541 U.S. at 51) (holding that the Confrontation Clause encompasses only testimonial hearsay). Because we conclude that any potential error in admitting the testimony was harmless beyond a reasonable doubt, we need not decide whether admission of Detective Dominguez's statements violated the Confrontation Clause. *See State v. King*, 212 Ariz. 372, 380, ¶ 36, 132 P.3d 311, 319 (App. 2006).

¶33    Even without the detective's contested testimony, the jury still heard evidence that Lee suffered stab and puncture wounds to her chest, breasts, and abdomen; puncture wounds and bleeding were observed around her vulva; none of the wounds

---

[10]    *Cf. United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (holding that officers who are "note-takers" could testify to statements made by surveillance officers because the

would have been fatal; she died from "asphyxiation due to airway obstruction with soil"; she had ligature marks on her wrists and ankles; there were struggle areas found at the scene; the stab wounds occurred around the time of death; the ligature marks were made before death; and a person could be conscious from forty-five seconds to several minutes while being asphyxiated. Thus, Detective Dominguez's testimony added very little to the evidence the jury already had before it to find that the murder of Lee was especially cruel, heinous, or depraved. Therefore, even if the admission of this testimony was erroneous, the error was harmless beyond a reasonable doubt.

**IV**

¶34     Smith also argues that the trial court erred in sentencing him to death by lethal injection. The State concedes that A.R.S. § 13-704(B) (2001) applies to Smith and allows him to choose between death by lethal injection or lethal gas, as long as he does so twenty days before the execution date.

¶35     We have authority under A.R.S. § 13-4037(A) (2001) to correct the sentences. Accordingly, we vacate the lethal injection portion of Smith's sentences and order that Smith be permitted to choose either lethal injection or lethal gas, as long as he does so at least twenty days before the execution

---

statements fell under the federal present sense impression exception to the hearsay rule).

16

date. If Smith fails to choose, the death penalty will be carried out by lethal injection. *Id.* § 13-704(B).

## V

**¶36** Smith argues that the superior court's limitation on questions, improper interjections, and attempts at juror rehabilitation during voir dire denied him the ability to obtain fair and impartial juries.

**¶37** A trial court has discretion to determine the scope of voir dire, which we will not overturn absent an abuse of that discretion. *State v. Mauro*, 159 Ariz. 186, 202, 766 P.2d 59, 75 (1988); *State v. Melendez*, 121 Ariz. 1, 3, 588 P.2d 294, 296 (1978); *see also* Ariz. R. Crim. P. 18.5(d), (e) & cmt.

## A

**¶38** Smith complains that the trial court's limitations on the questions that he could ask left only general "follow the law" questions, and thus violated the rule of *Morgan v. Illinois*, 504 U.S. 719 (1992).

**¶39** In *Morgan*, the Supreme Court held that potential jurors must be asked whether they would automatically impose the death penalty if a defendant is found guilty, because a juror who would do so must be struck for failure to be impartial. *Id.* at 729, 736. Although there is no "catechism for *voir dire*," the defendant's right to an impartial jury nonetheless requires "adequate *voir dire* to identify unqualified jurors." *Id.* at

17

729. The Court further held that simply asking potential jurors whether they can follow the law and be fair and impartial is insufficient. *Id.* at 735-36.

¶40 *Morgan*, however, does not require that Smith be permitted to ask the questions that he claims were improperly limited. First, we have previously held that a trial court may prohibit a defendant from asking potential jurors about their understanding of the phrase "sufficiently substantial to call for leniency." *Glassel*, 211 Ariz. at 46, ¶ 40, 116 P.3d at 1206. Such questioning is not allowed because the phrase is necessarily subjective. *Id.* Moreover, the manner in which Smith's counsel posed the question improperly asked the potential jurors, without having heard any of the evidence, to opine on what it would take to meet that standard. *See Melendez*, 121 Ariz. at 3, 588 P.2d at 296.

¶41 Second, the superior court did not abuse its discretion in refusing to allow Smith's open-ended questions about the best reason for having or not having the death penalty, the importance of considering mitigation, and the type of offense for which the juror would consider death to be appropriate. *See Glassel*, 211 Ariz. at 47, ¶ 44, 116 P.3d at 1207. Each of these questions was quite broad and went well beyond the constitutionally required determination of whether the juror would consider mitigation.

18

¶42     Finally, Smith complains that he was not permitted to ask jurors whether they would automatically impose the death penalty if they found specific aggravators.  *Morgan* was not meant to allow a defendant to "ask a juror to speculate or precommit on how that juror might vote based on any particular facts."  *United States v. McVeigh*, 153 F.3d 1166, 1207 (10th Cir. 1998).  Defendants also cannot seek to "condition" or "commit [jurors] to certain positions prior to receiving the evidence."  *Melendez*, 121 Ariz. at 3, 588 P.2d at 296.  Smith's question attempted to do just that.  As we have already held, a trial court is not required to allow a defendant to ask about how a juror would assess specific mitigation.  *State v. Johnson*, 212 Ariz. 425, 434, ¶ 31, 133 P.3d 735, 744 (2006), *cert. denied*, 127 S. Ct. 559 (2006).  We hold that the same is true of voir dire focused on the assessment of specific aggravators.  *See, e.g.*, *People v. Brown*, 665 N.E.2d 1290, 1303 (Ill. 1996) (holding that *Morgan* did not require questions about specific aggravators to be asked of potential jurors).

¶43     In addition, *Morgan* does not, as Smith seems to contend, prohibit the trial court from asking jurors whether they will follow the law.  As long as counsel has sufficient opportunity to determine whether a particular juror would automatically impose the death penalty upon a guilty verdict, such general questioning may occur without running afoul of the

19

mandate of *Morgan*. 504 U.S. at 736. Smith had several opportunities to determine whether any of the jurors would automatically impose death. The jurors filled out questionnaires, which contained the *Morgan* question, along with other questions about the death penalty, and Smith had ample opportunity to question potential jurors – including asking some jurors the very questions that he complains were limited. *See Johnson*, 212 Ariz. at 435, ¶ 34, 133 P.3d at 745; *Glassel*, 211 Ariz. at 47, ¶ 44, 116 P.3d at 1207.

**B**

¶44    Smith also contends that the superior court judge abused his discretion by interrupting voir dire and "rehabilitating" potential jurors. We focus only on the complaints related to deliberating jurors, as any error with respect to non-deliberating jurors was harmless. *Glassel*, 211 Ariz. at 46, ¶ 41, 116 P.3d at 1206.

¶45    The record refutes Smith's claim that the trial judge's interruptions denied him the right to adequately exercise his challenges. Smith had multiple opportunities to question the potential jurors to determine whether they would automatically impose the death penalty. Further, the trial judge's interruptions consisted almost entirely of explanations of the law and clarification of the questions being asked or answers being given. Because the trial judge is responsible for

20

ensuring that voir dire is conducted in a manner that results in a fair and impartial jury for both sides, Ariz. R. Crim. P. 18.5(d), (e) & cmt., a judge may interject to make certain a juror understands the legal requirements for service, the law on a particular subject, and the question being asked. *See Wainwright v. Witt*, 469 U.S. 412, 435 (1985) (stating that a trial court "is free to interrupt questioning to clarify any particular statement"). Therefore, the court's interjections were permissible and did not amount to an abuse of discretion.

**¶46**     Smith fails to offer any examples of deliberating jurors whom the trial judge improperly rehabilitated to support his argument that automatic death jurors sat on either jury. Accordingly, we find no abuse of discretion on this claim.

**VI**

**¶47**     Smith next argues that the trial court erred when it failed to exclude rebuttal evidence that was unduly prejudicial, cumulative, did not refute any mitigator, and served as an improper aggravator.[11]

**¶48**     We review a trial court's evidentiary decisions for an abuse of discretion, *Hampton*, 213 Ariz. at 178, ¶ 45, 140 P.3d at 961, giving deference to its determination on relevance,

---

[11]   We recently rejected the claim that the Eighth Amendment limits the state to urging statutory aggravating factors when presenting rebuttal evidence during the penalty phase. *See Hampton*, 213 Ariz. at 178, ¶ 46 n.10, 140 P.3d at 961 n.10.

*McGill*, 213 Ariz. at 156-57, ¶ 40, 140 P.3d at 939-40, and unfair prejudice, *State v. Vickers*, 159 Ariz. 532, 540, 768 P.2d 1177, 1185 (1989) (dealing with Arizona Rule of Evidence 403, which is fundamentally the same as the relevance assessment under A.R.S. § 13-703(C) (Supp. 2004), *McGill*, 213 Ariz. at 157, ¶ 40, 140 P.3d at 940).

¶49    Under A.R.S. § 13-703(C), the state and the defendant are permitted to produce any evidence at the penalty phase relevant to any of the mitigating circumstances, regardless of whether the rules of evidence would allow it in another phase of the trial.    Furthermore, A.R.S. § 13-703.01(G) (Supp. 2004) permits both parties to present evidence that is relevant to whether the mitigation presented is sufficiently substantial to call for leniency.

¶50    In rebuttal at both sentencing proceedings, the State offered testimony concerning the facts of Smith's prior rape and murder convictions.    A detective described to the juries the circumstances of Smith's first two rape convictions, which involved a woman to whom Smith and his wife had offered a ride. Smith forcibly raped the victim twice, once while at Smith's house with his wife present, and again in the desert inside of Smith's car while his wife sat outside on the trunk of the car. Smith repeatedly threatened to kill the victim and spoke about

22

bodies being found in the desert. He released her, however, after she promised to bring him money the following day.

¶51     The jury in the Spencer sentencing proceeding heard testimony related to Smith's third prior rape conviction from the victim. She testified that Smith offered her a ride home, but instead drove her into the desert. While there, Smith bound her hands, forced her to engage in intercourse, raped her with a Pepsi bottle, forced her to give and receive oral sex, sodomized her, and forced her to urinate while he watched. He repeatedly threatened to kill her while brandishing a knife, told her that he was a "sadist," and asked her whether she wanted pins or the knife stuck in her nipple. Eventually, Smith drove the victim back into town and released her.

¶52     Finally, each jury was told about the facts of Smith's other murder conviction - the Spencer jury was told about the Lee murder and vice versa.

¶53     The superior court correctly determined that this testimony was relevant to the diagnosis of sexual sadism, which was the thrust of Smith's mitigation.[12] Indeed, the mental health experts relied on the underlying facts of these crimes to diagnose Smith. This testimony thus assisted the jury in its

---

[12]     Smith concedes the relevance of this testimony, but objects to the way it was presented. In particular, he complains that allowing the rape victim to testify was inappropriate. Smith

23

evaluation of that testimony and in determining whether Smith's mental illness played a role in each murder.

¶**54**      The relevance determination, however, does not end our inquiry. *Hampton*, 213 Ariz. at 179, ¶ 48, 140 P.3d at 962. The Due Process Clause constrains admission of rebuttal evidence, *id.*, and requires that unduly prejudicial evidence be excluded if it makes the proceeding "fundamentally unfair," *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). The Supreme Court has said that establishing a denial of due process in a criminal trial requires a finding "that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941).

¶**55**      Although trial courts "should exclude [rebuttal] evidence that is either irrelevant to the thrust of the defendant's mitigation or otherwise unfairly prejudicial," *Hampton*, 213 Ariz. at 180, ¶ 51, 140 P.3d at 963, none of the testimony about which Smith complains rendered his sentencing proceedings fundamentally unfair. The superior court carefully assessed and scrutinized the prejudicial nature of the rebuttal evidence. The court limited the scope of the rape victim's testimony in the Lee sentencing proceeding based on the

acknowledges, however, that he would not have objected had the mental health experts testified to the same facts.

24

mitigation evidence that was presented and also limited the bad acts testimony that could be presented.[13] Given the relevance to Smith's mitigation, the limits imposed by the trial court, and the deference given prejudice assessments, we conclude that no violation of Smith's due process rights occurred.

## VII

**¶56** Finally, Smith argues that his death sentences should be vacated because his state and federal speedy trial rights have been violated by the twenty-seven year delay between his convictions and his resentencing.

**¶57** We review issues of state and federal constitutional law de novo. *State v. McCann*, 200 Ariz. 27, 28, ¶ 5, 21 P.3d 845, 846 (2001). Any factual determination related to these issues, however, is reviewed for an abuse of discretion. *State v. Moody*, 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004); *State v. Stielow*, 14 Ariz. App. 445, 448, 484 P.2d 214, 217 (1971).

---

[13] The State initially wanted to ask the mental health experts about eleven different acts because they related to the diagnoses. The court's ruling limited the testimony to the three rape convictions, the murder convictions, and another rape conviction that was overturned on appeal, *see State v. Smith*, 123 Ariz. 243, 253, 599 P.2d 199, 209 (1979). The State later chose not to present evidence of the conviction that had been overturned on appeal.

25

**A**

¶58     Although this Court and the Supreme Court have never explicitly held that the speedy trial right applies to sentencing, neither court has foreclosed that possibility. *See Pollard v. United States*, 352 U.S. 354, 361 (1957); *State v. Blazak*, 131 Ariz. 598, 600, 643 P.2d 694, 696 (1982) (citing *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475 (1980)).  In *Pollard*, the Supreme Court assumed, without deciding, that the Sixth Amendment right to a speedy trial extends to sentencing. 352 U.S. at 361.  We do the same today.

¶59     In addressing Smith's speedy trial claim we must assess the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also State v. Brannin*, 109 Ariz. 525, 528-29, 514 P.2d 446, 449-50 (1973) (applying the *Barker* factors to analyze a speedy trial claim).  The most important factor is prejudice; delay is the least, simply acting as a gatekeeper.  *See Barker*, 407 U.S. at 530 (calling the delay factor a "triggering mechanism," and stating that unless the delay is "presumptively prejudicial" in length the other factors need not be addressed); *Schaaf*, 169 Ariz. at 327, 819 P.2d at 913.

¶60      We reject Smith's argument that the relevant delay, for purposes of the speedy trial analysis, is twenty-seven years. "[W]e . . . do not believe that the period of time between notice of appeal and retrial upon reversal can be counted as part of the time to be considered in a constitutional denial of a defendant's right to speedy trial." *State v. Ward*, 120 Ariz. 413, 416, 586 P.2d 974, 977 (1978). Once there has been a conviction, the defendant has been sentenced, and he has appealed, the trial court has no need or authority to proceed any further. *Id.* at 415-16, 586 P.2d at 976-77 (quoting *State v. Ames*, 190 So. 2d 223, 227 (La. 1966)). Were we to accept Smith's argument, it would undercut the principle that a defendant can be retried after appellate reversal without running afoul of the speedy trial right. *See United States v. Ewell*, 383 U.S. 116, 121 (1966) (citing *Ball v. United States*, 163 U.S. 662, 671-72 (1896), and *United States v. Tateo*, 377 U.S. 463, 465, 473-74 (1964)).

¶61      Therefore, absent evidence that the state deliberately delayed the proceedings and the defendant was prejudiced by the delay, we do not count the time on appeal. *United States v. Loud Hawk*, 474 U.S. 302, 316 (1986); *Ward*, 120 Ariz. at 416, 586 P.2d at 977. Because Smith does not allege any such actions by the State, we concern ourselves here only with the time after

the superior court was revested with jurisdiction. *Ward*, 120 Ariz. at 416, 586 P.2d at 977; *see also United States v. Alston*, 412 A.2d 351, 359 (D.C. 1980). Smith has conceded that there was no speedy trial violation if the time on appeal is not counted; therefore, we need not address the remaining *Barker* factors.[14]

## VIII

**¶62** Because both murders occurred before August 1, 2002, we must independently review the "findings of aggravation and mitigation and the propriety of the death sentence[s]."[15] A.R.S. § 13-703.04(A) (Supp. 2006); *see also* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, §§ 1, 7(B) (providing that § 13-703.04(A) applies to any sentencing or resentencing in a first-degree murder case that occurs after the effective date of the act when the offense was committed before the act's effective date). If we decide "that the mitigation is sufficiently substantial to

---

[14] Smith also claims that executing him after twenty-seven years on death row would violate his Eighth Amendment right to be free from cruel and unusual punishment. We expressly rejected this argument in *State v. Schackart*, 190 Ariz. 238, 259, 947 P.2d 315, 336 (1997), and do so again here, particularly because much of the delay resulted from Smith's pursuit of his rights to post-conviction relief, as opposed to intentional delay by the State in carrying out the death sentence.

[15] At the time of the murders, this Court independently reviewed the aggravation and mitigation evidence to determine whether the death sentence was appropriate. *State v. Richmond*,

28

warrant leniency," we must impose a life sentence. A.R.S. § 13-703.04(B). If it is not, we must affirm the death sentence. *Id.*

¶63    In both sentencing proceedings, the State proved three aggravating factors beyond a reasonable doubt. Smith's three prior rape convictions conclusively established that he had been convicted of another offense that carried a possible sentence of life imprisonment or death. *See* A.R.S. § 13-454(E)(1). As discussed above, his prior convictions for first-degree murder met the requirements of A.R.S. § 13-454(E)(2). Finally, overwhelming evidence established that the murders of Spencer and Lee were especially cruel. *See Id.* § 13-454(E)(6).

¶64    The "cruelty" prong of the (E)(6) aggravator focuses on the victim's mental anguish and physical suffering. A finding of cruelty requires proof that the victim "consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Trostle,* 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citation omitted).

¶65    Spencer and Lee both died of asphyxiation after having their noses and mouths filled with dirt and taped shut. They also had marks on their wrists and ankles from ligatures that

114 Ariz. 186, 196, 560 P.2d 41, 51 (1976). Section 13-703.04 is a codification of this review.

29

had been placed before death. Although the medical examiner could not conclusively establish consciousness before they had been bound, the tape and ligatures would have been unnecessary if the victims were unconscious. *See State v. Djerf*, 191 Ariz. 583, 596, ¶ 49, 959 P.2d 1274, 1287 (1998). Asphyxiation caused by stuffing a victim's nose and mouth with dirt while bound would undoubtedly cause mental anguish and physical pain. At a minimum, Smith should have known pain and anguish would occur.

¶66    Proof of cruelty is sufficient to establish the (E)(6) aggravator because the aggravator is stated in the disjunctive. *State v. Cromwell*, 211 Ariz. 181, 189, ¶ 43, 119 P.3d 448, 456 (2005), *cert. denied*, 126 S. Ct. 2291 (2006). Because we independently conclude that the murders of Spencer and Lee were cruel, we need not consider the separate findings of heinousness and depravity. *Id.*

¶67    The focus of Smith's mitigation evidence related to his mental health. Smith's mental health expert testified that he suffered from sexual sadism with a form of anxiety disorder, which contributed to the commission of the murders. The role of Smith's mental health in the commission of these murders, and therefore the quality of the mitigation, however, is called into serious question by testimony that Smith could have controlled his impulses and that he likely knew what he was doing and that it was wrong.

30

¶68     The remainder of Smith's mitigation focused on his good conduct while in prison and his family life. But conflicting testimony regarding the presence or substantiality of these mitigators also lessens their impact.

¶69     After review of the record, we hold that even if all of Smith's claimed mitigators were established, the mitigation presented was not sufficiently substantial to warrant leniency given the nature of the crimes committed and the aggravators that we have found proven beyond a reasonable doubt. *See* A.R.S. § 13-703.04(B). We therefore affirm the death sentences. *Id*.

### IX

¶70     Smith raises twelve challenges to the constitutionality of Arizona's death penalty scheme to preserve them for further review. He acknowledges, however, that we have already decided these issues. Smith asserts:

¶71     (1) The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Sections 1, 4, and 15, of the Arizona Constitution. We rejected this argument in *State v. Finch*, 202 Ariz. 410, 419, ¶ 50, 46 P.3d 421, 430 (2002) (citing *State v. Rossi*, 146 Ariz. 359, 366, 706 P.2d 371, 378 (1985)).

¶72     (2) Arizona's death penalty, as applied, discriminates against poor, young, and male defendants in

31

violation of Article 2, Sections 1, 4, and 13, of the Arizona Constitution. This argument was rejected in *State v. Sansing*, 200 Ariz. 347, 361, ¶ 46, 26 P.3d 1118, 1132 (2001), *vacated on other grounds*, 536 U.S. 954 (2002), and *Schackart*, 190 Ariz. at 260, 947 P.2d at 337.

**¶73** (3) The death penalty is cruel and unusual punishment under any circumstances and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15, of the Arizona Constitution. The Supreme Court rejected this argument in *Gregg v. Georgia*, 428 U.S. 153, 186-87 (1976); we rejected it in *State v. Harrod*, 200 Ariz. 309, 320, ¶ 59, 26 P.3d 492, 503 (2001), *vacated on other grounds*, 536 U.S. 953 (2002), and *Blazak*, 131 Ariz. at 601, 643 P.2d at 698.

**¶74** (4) The absence of proportionality review of death sentences by Arizona courts denies capital defendants due process of law and equal protection, and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, Section 15, of the Arizona Constitution. *State v. Gulbrandson*, 184 Ariz. 46, 73, 906 P.2d 579, 606 (1995) (citing *Pulley v. Harris*, 465 U.S. 37, 43-44 & n.6 (1984), and *State v. Salazar*, 173 Ariz. 399, 416, 844 P.2d 566, 583 (1992)), rejected this argument.

**¶75** (5) Arizona's capital sentencing scheme is unconstitutional because it does not require that the state prove that the death penalty is appropriate, which violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, Section 15, of the Arizona Constitution. This argument was rejected in *State v. Van Adams*, 194 Ariz. 408, 423, ¶ 55, 984 P.2d 16, 31 (1999) (citing *Gulbrandson*, 184 Ariz. at 72, 906 P.2d at 605).

**¶76** (6) The death penalty is cruel and unusual because it is irrationally and arbitrarily imposed. The statute requires that the death penalty be imposed if the jurors find one or more aggravating circumstances and no mitigation that is sufficiently substantial to call for leniency. Furthermore, the death penalty serves no purpose that is not adequately addressed by a sentence of life imprisonment. Therefore, it violates the defendant's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, Sections 1 and 4, of the Arizona Constitution. This proposition was recently rejected in *Cromwell*, 211 Ariz. at 192, ¶ 63, 119 P.3d at 459. *See also State v. Pandeli*, 200 Ariz. 365, 382, ¶ 88, 26 P.3d 1136, 1153 (2001), *vacated on other grounds*, 536 U.S. 953 (2002); *State v. Beaty*, 158 Ariz. 232, 246-47, 762 P.2d 519, 533-34 (1988).

33

¶77    (7) Section 13-703 provides no objective standards to guide the jurors in weighing the aggravating and mitigating circumstances and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15, of the Arizona Constitution. This argument was rejected in *Pandeli*, 200 Ariz. at 382, ¶ 90, 26 P.3d at 1153 (citing *State v. White*, 194 Ariz. 344, 355, ¶ 49, 982 P.2d 819, 830 (1999)).

¶78    (8) Section 13-703 does not sufficiently narrow the class of murders that are death eligible because the aggravating factors are so broad that they encompass nearly every murder; therefore, it violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Section 15, of the Arizona Constitution. This claim was also rejected in *Pandeli*, 200 Ariz. at 382, ¶ 90, 26 P.3d at 1153.

¶79    (9) Execution by lethal injection is cruel and unusual punishment. The Court rejected this proposition in *Van Adams*, 194 Ariz. at 422, ¶ 55, 984 P.2d at 30 (citing *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995)).

¶80    (10) A proportionality review of a defendant's death sentence is constitutionally required. *Gulbrandson*, 184 Ariz. at 73, 906 P.2d at 606 (citing *Pulley*, 465 U.S. at 43-44 & n.6), rejected this argument.

¶81     (11) Arizona's death penalty statute violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, Sections 4 and 15, of the Arizona Constitution because it does not require multiple mitigating factors to be considered cumulatively or require the fact-finder to make specific findings as to each mitigating factor. The Court recently rejected this argument in *State v. Anderson*, 210 Ariz. 327, 359, app. A, 111 P.3d 369, 401 (2005), *cert. denied*, 126 S. Ct. 193 (2005). *See also Van Adams*, 194 Ariz. at 423, ¶ 55, 984 P.2d at 31.

¶82     (12) Arizona's death penalty statute is constitutionally deficient because it requires defendants to prove that their lives should be spared. *State v. Roseberry*, 210 Ariz. 360, 375, app., 111 P.3d 402, 417 (2005), *cert. denied*, 126 S. Ct. 444 (2005), rejected this proposition. *See also State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988) (holding that shifting the burden of proof on mitigation to the defendant is not unconstitutional).

**X**

¶83     For the foregoing reasons, we affirm Smith's sentences as modified to comply with A.R.S. § 13-704(B).

_____
Michael D. Ryan, Justice

35

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
Maurice Portley, Judge*


* Pursuant to Article 6, Section 3, of the Arizona Constitution, the Honorable Maurice Portley, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.